United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JESUS HERNANDEZ, JORGE HERNANDEZ, ANA KAREN MUNOZ, and JESUS SANTOS,<br><br>Plaintiffs,<br><br>v.<br><br>FIDEL MARTINEZ, LUCILLA ANN MARTINEZ, and ZENTIRAM FINISHING INC.,<br><br>Defendants. | Case No.: 12-CV-06133-LHK<br><br>ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT |

Plaintiffs Jesus Hernandez, Jorge Hernandez, Ana Karen Muñoz, and Jesus Santos (collectively, "Plaintiffs") bring this action against Fidel Martinez, Lucilla Ann Martinez, and Zentiram Finishing Inc. (collectively, "Defendants") seeking damages arising from Defendants' failure to pay overtime and minimum wages as required by the Fair Labor Standards Act ("FLSA") and California wage orders and statutes. Plaintiffs allege that Defendants failed to compensate Plaintiffs, who are Defendants' former employees, for overtime and minimum wages.

On March 26, 2014, Plaintiffs filed their Third Motion for Default Judgment against Defendants Fidel Martinez and Lucilla Ann Martinez (the "Martinez Defendants"). ECF No. 34 ("Mot."). Pursuant to Civil Local Rule 7-1(b), the Court finds Plaintiffs' Motion appropriate for

1

1    determination without oral argument.  As explained below, the Court denied without prejudice

2    Plaintiffs' earlier requests for entry of default judgment against Defendants.  ECF No. 33.  In this

3    Motion, Plaintiffs have addressed most of the deficiencies, although the amounts Plaintiffs request

4    for unpaid overtime compensation, liquidated damages, and attorneys' fees require adjustment.

5    The Court therefore GRANTS Plaintiffs' Motion but in amounts different than Plaintiffs' request.

6    **I.    BACKGROUND**

7       **A.    Factual Background**

8       According to Plaintiffs' allegations, Defendants conducted an "industrial painting business"

9    in Santa Clara County and employed each Plaintiff for varying time periods.  Mot. at 5; First Am.

10   Compl. ¶¶ 7-9.  Plaintiffs allege that Defendants avoided paying proper wages by "paying in cash

11   most if not all of the hours worked at the regular rate of pay," First Am. Compl. ¶ 9, and failed to

12   provide any records of Plaintiffs' hours, *see* Mot. at 10.

13      Jesus Hernandez worked for Defendants from the end of 2004 until December 2011, when

14   he quit.  *See* Jesus Hernandez Decl. (ECF No. 34-1) ¶¶ 2, 13.  He claims that after six months, he

15   became a manager who supervised employees, worked with clients, and took charge of production,

16   but did not have "authority to hire or fire."  *Id.* ¶ 4.  He does not state his hours prior to becoming

17   manager, but says that his schedule afterwards was usually 6:30 A.M. to 9:00 P.M. Monday

18   through Friday, and 6:30 A.M. to 2:00 or 3:00 P.M. on Saturdays.  *Id.* ¶ 5.  By 2009, his schedule

19   ended at 6:30 P.M. Monday through Friday.  *Id.*  He claims that Fidel Martinez asked him to work

20   on Sundays instead of Saturdays starting in October or November 2009, but Jesus Hernandez

21   refused and worked one or two Sundays per month.  *Id.* ¶ 6.  Jesus Hernandez also states that he

22   initially earned $15 per hour, then $16 per hour "around the beginning of 2009," and then $15 per

23   hour "around March 2010."  *Id.* ¶ 7.

24      Jorge Hernandez (Jesus Hernandez's nephew) worked for Defendants from September 2007

25   until December 2011, when he quit.  *See* Jorge Hernandez Decl. (ECF No. 34-2) ¶¶ 2, 13.  He

26   states that he first worked as a washer with a typical schedule of 7:00 A.M. to roughly 6:00 or 6:30

27   P.M. Monday through Friday, and 7:00 A.M. to 1:00 or 2:00 P.M. on Saturdays.  *Id.* ¶¶ 4-5.  In

28   2010, he received a promotion as a painter and worked 7:00 A.M. to 5:00 P.M. Monday through

Case No.: 12-CV-06133-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT

United States District Court
For the Northern District of California

1    Friday, and 7:00 A.M. to 12:00 P.M. on Saturdays.  *Id.* ¶ 9.  He earned $10 per hour as a painter

2    and received a raise to $11 per hour in 2011.  *Id.* ¶¶ 9, 11.

3        Ana Karen Muñoz (Jesus Hernandez's wife) worked for Defendants for two periods

4    between March 2007 and April 2012.  *See* Muñoz Decl. (ECF No. 34-3) ¶¶ 2, 15.  She claims that

5    she worked part time until she was laid off in January 2009, and then started again in August 2010,

6    working as a secretary and in the factory.  *Id.* ¶¶ 6-9.  She states that her schedule was generally

7    6:00 A.M. to 4:30 P.M. Monday through Friday, and then until 9:00 P.M. after business increased

8    in 2011.  *See id.* ¶¶ 8-9, 13-14.  Muñoz states that she earned $9 per hour, *id.* ¶ 8, and her wage

9    stubs show that she eventually earned $10 per hour, ECF No. 34-7.

10        Jesus Santos worked for Defendants from 1995 until October 2011.  *See* Santos Decl. (ECF

11   No. 34-4) ¶¶ 2, 12-19.  Santos recalls that his schedule was approximately 6:30 or 7:00 A.M. to

12   7:00 or 8:00 P.M. Monday through Friday, though he "stayed at work for ten hours during

13   weekdays," and 9:00 A.M. to 3:30 or 4:00 P.M. on Saturdays or Sundays, or "about eight hours on

14   a weekend." *Id.* ¶ 4.  He states that he received $7.75-8.25 per hour at various periods, in cash.  *Id.*

15   ¶¶ 5, 10.  Santos also claims that he suffered injuries at work that led to partial amputation of his

16   left leg, but those injuries are not part of this suit.  *See id.* ¶¶ 12-18.

17        In addition to describing their work histories, Plaintiffs submit individual spreadsheets with

18   their asserted hours, wages, and damages demands.  *See* ECF Nos. 34-1 to -4.  Plaintiffs' counsel

19   also filed multiple supporting declarations to explain Plaintiffs' damages calculations.  *See* 31-6

20   ("First Tran Decl."), 34-5 ("Second Tran Decl.").  Plaintiffs seek only damages within the asserted

21   limitations periods for their claims.  Plaintiffs do not have pay records aside from certain wage

22   stubs that Jesus Hernandez and Muñoz saved.  *See* Second Tran Decl. ¶ 22.

23        **B.    Procedural Background**

24        On December 4, 2012, Plaintiffs filed this action against the Martinez Defendants.  Compl.

25   (ECF No. 1).  On February 1, 2013, Plaintiffs amended their complaint to add Zentiram Finishing

26   Inc. ("Zentiram").  First Am. Compl. (ECF No. 8).  Plaintiffs allege causes of action under the

27   FLSA, California Labor Code (for overtime, minimum wage, and waiting time claims), and

28   California Business and Professions Code § 17200.  *See id.*

3

United States District Court
For the Northern District of California

1    Plaintiffs subsequently received notice that Zentiram had entered bankruptcy proceedings,

2    and filed a notice of stay as to Zentiram on March 4, 2013.  ECF No. 16.  At Plaintiffs' request, the

3    Clerk of the Court entered default as to the Martinez Defendants on March 6, 2013.  ECF No. 19.

4    Default was not requested or entered as to Zentiram.  No Defendants have appeared in this case.

5    Plaintiffs initially moved for default judgment against the Martinez Defendants on February

6    22, 2013 (ECF No. 15), but withdrew their motion on March 5, 2013 (ECF No. 17).  On June 10,

7    2013, Plaintiffs filed a Motion for Default Judgment against the Martinez Defendants ("Plaintiffs'

8    June 2013 Motion").  ECF No. 28.  On October 11, 2013, Plaintiffs filed another Motion for

9    Default Judgment against the Martinez Defendants ("Plaintiffs' October 2013 Motion").  ECF No.

10   31.  The Court denied without prejudice Plaintiffs' June 2013 and October 2013 Motions, due to

11   apparent inconsistencies between the two Motions regarding calculations of damages and attorney

12   fees.  ECF No. 33.  The Court further ordered Plaintiffs to address these inconsistencies within 30

13   days.  *See id.* at 5.

14   On March 26, 2014, Plaintiffs timely filed this Motion, again seeking entry of default

15   judgment against the Martinez Defendants.  *See* Mot.  No response has been filed.

16   **II.    LEGAL STANDARDS**

17   Pursuant to Rule 55(b)(2), the court may enter a default judgment when the clerk, under

18   Rule 55(a), has previously entered the party's default.  Fed. R. Civ. P. 55(b).  "The district court's

19   decision whether to enter a default judgment is a discretionary one."  *Aldabe v. Aldabe*, 616 F.2d

20   1089, 1092 (9th Cir. 1980).  Once the Clerk of Court enters default, all well-pleaded allegations

21   regarding liability are taken as true, except with respect to damages.  *See Fair Hous. of Marin v.

22   Combs*, 285 F.3d 899, 906 (9th Cir. 2002); *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-

23   18 (9th Cir. 1987); *Philip Morris USA Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D.

24   Cal. 2003) ("[B]y defaulting, Defendant is deemed to have admitted the truth of Plaintiff's

25   averments.").

26   "Factors which may be considered by courts in exercising discretion as to the entry of a

27   default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's

28   substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action;

United States District Court
For the Northern District of California

4

1    (5) the possibility of a dispute concerning material facts; (6) whether the default was due to

2    excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure

3    favoring decisions on the merits."  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

4    ## III.    DISCUSSION

5    ### A.    Jurisdiction

6           "When entry of judgment is sought against a party who has failed to plead or otherwise

7    defend, a district court has an affirmative duty to look into its jurisdiction over both the subject

8    matter and the parties.  A judgment entered without personal jurisdiction over the parties is void."

9    *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) (citations omitted).  The Court thus begins by

10   evaluating subject matter jurisdiction and personal jurisdiction.

### 1.    Subject Matter Jurisdiction

12          The Court finds the exercise of subject matter jurisdiction over this case is proper.  "[A]

13   federal court may exercise federal-question jurisdiction if a federal right or immunity is an element,

14   and an essential one, of the plaintiff's cause of action."  *Provincial Gov't of Marinduque v. Placer

15   Dome, Inc.*, 582 F.3d 1083, 1086 (9th Cir. 2009) (citation and quotation omitted); *see also* 28

16   U.S.C. § 1331.  Plaintiffs assert claims under the FLSA and various California wage and hour

17   statutes.  *See* First Am. Compl. ¶¶ 10-39.  The FLSA establishes a federal right for qualified

18   employees to overtime pay for hours worked over the maximum hours set in the FLSA and to

19   liquidated damages for violations of the FLSA.  *See* 29 U.S.C. § 216(b).  Thus, a FLSA cause of

20   action raises a federal question, and the Court properly may exercise subject matter jurisdiction

21   over the FLSA cause of action.[1]  Because the state law claims arise out of the same factual

22   allegations as the FLSA cause of action, the Court exercises supplemental jurisdiction over those

23   claims.  *See* 28 U.S.C. § 1367(a).

24

25   ---

[1]      Plaintiffs allege that Defendants' gross sales "meet the jurisdictional minimum" of the
26   FLSA.  First Am. Compl. ¶ 3.  The FLSA applies to enterprises "whose annual gross volume of
     sales made or business done is not less than $ 500,000."  29 U.S.C. § 203(s)(1).  However, courts
27   have held that this not a jurisdictional requirement, but rather an element of a FLSA claim.  *E.g.*,
     *Jiang v. Lee's Happy House*, No. 07-CV-03606-RS, 2007 U.S. Dist. LEXIS 80861, at *6-7 (N.D.
28   Cal. Oct. 23, 2007).

5

Case No.: 12-CV-06133-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT

## 2.     Personal Jurisdiction

Because no federal statute governs personal jurisdiction, the Court "applies the law of the state in which the court sits."  *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).  California's long-arm statute governing personal jurisdiction, Cal. Code Civ. P. § 410.10, is coterminous with federal due process requirements.  *Id.*

Here, Plaintiffs allege that the Martinez Defendants are individuals who "were engaged in business in Santa Clara County."  First Am. Compl. ¶ 5; *see also* Second Tran Decl. ¶ 2.  However, Plaintiffs have not alleged that the Martinez Defendants are residents of California.  "For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, that defendant must have 'certain minimum contacts' with the relevant forum 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  *Mavrix*, 647 F.3d at 1223 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Personal jurisdiction over non-residents can arise under either general or specific jurisdiction.  *Id.* at 1223, 1227.  "For general jurisdiction to exist, a defendant must engage in continuous and systematic general business contacts."  *Id.* at 1223 (internal citations and quotations omitted).  For specific jurisdiction, the Court applies a three-prong test to determine specific jurisdiction: (1) the defendant "must purposefully direct his activities or consummate some transaction with the forum or resident thereof"; (2) "the claim must be one which arises out of or relates to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable."  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  The Court finds that the allegations regarding the Martinez Defendants suffice under specific jurisdiction, and therefore does not address general jurisdiction.

### i.     Purposeful Direction and Availment

The standard under the first prong of the test differs for claims sounding in tort and claims sounding in contract.  *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006).  For tort claims, the "purposeful direction" standard generally applies, and for contract claims, the "purposeful availment" test generally applies.  *Id.*  "Personal

United States District Court
For the Northern District of California

jurisdiction must exist for each claim asserted against a defendant." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004). However, "a court may assert pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction." *Id.* at 1180-81 (adopting doctrine of pendent personal jurisdiction); *see also Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 673 (9th Cir. 2012) (following *Action Embroidery*).

Here, Plaintiffs pleaded both FLSA and California state law claims that relate to overtime pay, minimum wage violations, and waiting time penalties. Although a FLSA cause of action ostensibly arises from an employment contract, courts have likened FLSA claims to tort claims and have applied the purposeful direction standard. *See Enriquez v. Interstate Grp., LLC*, No. 11-CV-05155 YGR, 2012 WL 3800801, at *3 (N.D. Cal. Aug. 31, 2012) (applying purposeful direction to FLSA claim); *Holliday v. Lifestyle Lift, Inc.*, No. 09-CV-4995-RS, 2010 WL 3910143, at *3 (N.D. Cal. Oct. 5, 2010) (noting that policy of denying overtime compensation more comfortably fits within the "purposeful direction" analysis). Accordingly, the Court first analyzes personal jurisdiction over the FLSA claims under the purposeful direction test.

To satisfy the purposeful direction standard, the Martinez Defendants' activities must satisfy the three-part "effects test." *Schwarzenegger*, 374 F.3d at 802. The Martinez Defendants must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) that caused harm that they knew was likely to be suffered in the forum state. *Id.* In connection with their FLSA claim, Plaintiffs allege that the Martinez Defendants required Plaintiffs to work longer than 40 hours per week but did not pay corresponding overtime. *See* First Am. Compl. ¶¶ 13-15. The Court finds these allegations satisfy the "purposeful direction" standard.

For the first prong, "'intent' in the context of the 'intentional act' test refers to an intent to perform an actual physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Schwarzenegger*, 374 F.3d at 806. The Martinez Defendants' refusal to pay overtime reflects an intentional act that satisfies the first prong. *See Enriquez*, 2012 WL

United States District Court
For the Northern District of California

1    3800801, at *4 (finding defendants' policy of not paying overtime compensation was an

2    "intentional act"); *Holliday*, 2010 WL 3910143, at *4 (same).

3         For the second prong, the "intended impact" must be "targeted at a known individual who

4    has a substantial, ongoing connection to the forum." *Fiore v. Walden*, 688 F.3d 558, 578 (9th Cir.

5    2011).  The Martinez Defendants' employment of Plaintiffs in California and failure to pay

6    overtime compensation reflect actions that targets known individuals—Plaintiffs—in California.

7    *See Enriquez*, 2012 WL 3800801 at *5 (finding that operating retail stores in California and

8    applying policy of denial of overtime satisfied second prong).

9         For the third prong, the harm in the forum state must be foreseeable.  *See id.*  The Martinez

10   Defendants' alleged misconduct likewise satisfies the third prong because they could reasonably

11   foresee that their failure to pay Plaintiffs overtime would harm Plaintiffs in California.  *See id.*

12   (finding that application of policy to deny overtime in California satisfied third prong because harm

13   in forum state was reasonably foreseeable).

14        Accordingly, the FLSA claims satisfy the "purposeful direction" part of the test.

15   Furthermore, all of Plaintiffs' claims are based on common factual predicates: Defendants' alleged

16   failure to pay wages.  Therefore, the Court concludes that this part of the personal jurisdiction test

17   is satisfied for all pleaded claims.  *See Action Embroidery*, 368 F.3d at 1180-81.

**ii.    Forum-Related Activities**

19        The second part of the personal jurisdiction analysis is satisfied if the Martinez Defendants'

20   activities arise out of or relate to their forum-related activities.  *See Menken v. Emm*, 503 F.3d

21   1050, 1058 (9th Cir. 2007).  The Ninth Circuit follows the "but for" test, which requires Plaintiffs

22   to show that they "would not have suffered an injury 'but for'" the Martinez Defendants' forum-

23   related conduct.  *Id.*

24        Plaintiffs assert that the Martinez Defendants failed to pay Plaintiffs overtime while

25   employing Plaintiffs in California.  *See* First Am. Compl. ¶¶ 13-15.  The "but for" test is satisfied

26   because Plaintiffs' overtime claims are the result of the Martinez Defendants' misconduct.  *See*

27   *Enriquez*, 2012 WL 3800801 at *5 (finding "but for" test satisfied where defendant maintained

28   unlawful overtime policies in California stores, resulting in plaintiffs' claims).

8

*United States District Court*
For the Northern District of California

### iii.       Reasonableness

"Once it has been decided that a defendant purposefully established minimum contacts with a forum, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable in order to defeat personal jurisdiction." *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1132 (9th Cir. 2003) (internal quotations and citations omitted).  Because Plaintiffs have satisfied the first two parts, and no facts before the Court suggest that the exercise of personal jurisdiction is unreasonable, the Court finds the third part is also satisfied.

### B.       Whether Default Judgment is Proper

Having determined that the exercise of subject matter jurisdiction and personal jurisdiction is appropriate, the Court turns now to the *Eitel* factors to determine whether entry of default judgment against the Martinez Defendants is warranted.

### 1.       First *Eitel* Factor: Possibility of Prejudice

Under the first *Eitel* factor, the Court considers the possibility of prejudice to a plaintiff if default judgment is not entered against a defendant.  Absent a default judgment, Plaintiffs in this case will not obtain wages to which they are entitled and for which they have already worked.  Thus, the first factor weighs in favor of granting of default judgment.

### 2.       Second and Third *Eitel* Factors: Merits of Plaintiffs' Substantive Claims and the Sufficiency of the Complaint

The second and third *Eitel* factors address the merits and sufficiency of Plaintiffs' claims as pleaded in the Complaint.  These two factors are often analyzed together.  *See Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010).  In its analysis of the second and third *Eitel* factors, the Court will accept as true all well-pleaded allegations regarding liability.  *See Fair Hous. of Marin*, 285 F.3d at 906.  The Court will therefore consider the merits of Plaintiffs' claims and the sufficiency of their pleadings together.

### a.       Failure to Pay Overtime Under California and Federal Law

California Labor Code § 1194(a) states that "any employee receiving less than . . . the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid

9

United States District Court
For the Northern District of California

1    balance of the full amount of this . . . overtime compensation, including interest thereon, reasonable

2    attorney's fees, and costs of suit."  "Any work in excess of eight hours in one workday and any

3    work in excess of 40 hours in any one workweek . . . shall be compensated at the rate of no less

4    than one and one-half times the regular rate of pay for an employee."  *Id.* § 510(a).  "Any work in

5    excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate

6    of pay for an employee."  *Id.*  Under federal law, the legal overtime pay rate for employees is one

7    and one-half times an employee's regular hourly rate of pay for work performed in excess of 40

8    hours in a workweek.  29 U.S.C. § 207(a)(1).  Plaintiffs allege that they routinely worked in excess

9    of eight hours in a day and 40 hours in a week, and that Defendants willfully failed to pay them

10   time and a half for that time.  *See* First Am. Compl. ¶¶ 13-16, 20-21.

11          Both California and federal law exempt certain classes of employees from the protections

12   regarding overtime compensation, including administrative, executive, and management

13   employees.  *See* Cal. Lab. Code § 515(a); 29 U.S.C. § 213(a)(1).  The employer bears the burden to

14   show that any such exemptions apply, as an affirmative defense.  *See Eicher v. Advanced Bus.*

15   *Integrators, Inc.*, 151 Cal. App. 4th 1363, 1369-70 (2007) ("Moreover, the assertion of an

16   exemption from the overtime laws is considered to be an affirmative defense, and therefore the

17   employer bears the burden of proving the employee's exemption." (quotation and citation

18   omitted)); *Corning Glass Works v. Brennan*, 417 U.S. 188, 197 (1976) ("[T]he application of an

19   exemption under the Fair Labor Standards Act is a matter of affirmative defense on which the

20   employer has the burden of proof.").  Defendants failed to appear and establish that any relevant

21   exemptions apply to any Plaintiffs.  Moreover, Jorge Hernandez, Muñoz, and Santos have

22   described their duties in their declarations, and those duties were generally not administrative,

23   executive, or managerial.  Jesus Hernandez notes that he was a "manager" during the relevant time

24   periods and "supervised the employees," but states that "I had no authority to hire or fire, I didn't

25   set schedules or take time off requests, or deal with employee issues."  Jesus Hernandez Decl. ¶ 4.

26   Thus, he did not "customarily and regularly exercise[] discretion and independent judgment," as

27   required for at least the California exemption for executive, administrative, and professional

28   employees.  § 515(a).

United States District Court
For the Northern District of California

10

Plaintiffs have sufficiently alleged that the California and federal exemptions do not apply to their employment.  Plaintiffs have therefore adequately pleaded a violation of California and federal laws requiring payment of overtime compensation.

### b.    Waiting Time Penalties

California Labor Code § 203 provides that "[i]f an employer willfully fails to pay, without abatement or reduction, . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."  Upon discharge, the employees' earned and unpaid wages are due within 72 hours.  *Id.* § 201(a).

An employer effectuates a "discharge" not only when it fires an employee from ongoing employment, but also when it releases the employee upon completion of a particular job assignment or time duration for which he or she was hired.  *See Smith v. Super. Ct.*, 39 Cal. 4th 77, 92 (2006).  Additionally, the meaning of "willful" under § 203 "is that an employer has intentionally failed or refused to perform an act which was required to be done."  *See Amaral v. Cintas Corp. No. 2,* 163 Cal. App. 4th 1157, 1201 (2008).  "[T]he employer's refusal to pay need not be based on a deliberate evil purpose to defraud workmen of wages which the employer knows to be due."  *Id.* (citation and quotation omitted).  "A willful failure to pay wages within the meaning of Labor Code Section 203 occurs when an employer intentionally fails to pay wages to an employee when those wages are due.  However, a good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203."  8 Cal. Code. Reg. § 13520.  "A 'good faith dispute' that any wages are due occurs when an employer presents a defense, based in law or fact which, if successful, would preclude any recover[y] on the part of the employee."  *Id.*

In this case, Plaintiffs allege that "[a]t the time Plaintiffs were terminated by Defendants, Defendants owed them certain unpaid overtime wages."  First Am. Compl. ¶ 29.  Plaintiffs further allege that "Defendants have failed and refused, and continue to fail and refuse, to pay the amount due, thus making each such Defendant liable to Plaintiffs for penalties equal to thirty (30) days wages."  *Id.* ¶ 31.  Defendants have not presented a good faith dispute defense (or any defense at

11

1   all).  Thus, Plaintiffs' allegations suffice to establish Defendants' violation of California Labor

2   Code §§ 201-203.

### c.     Restitution for Unfair Business Practices (§ 17200)

4   California's Unfair Competition Law creates a cause of action for business practices that

5   are: (1) unlawful, (2) unfair, or (3) fraudulent.  Under California law, "any business act or practice

6   that violates the Labor Code through failure to pay wages is, by definition (§ 17200), an unfair

7   business practice."  *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 178-79 (2000).

8   Here, the predicate for Plaintiffs' § 17200 claim is Defendants' alleged violations of the wage and

9   hour laws discussed above.  Because Plaintiffs' allegations, taken as true, establish violations of

10  those statutes, Plaintiff may "borrow" from those violations to sustain a § 17200 claim.  *Cel-Tech*

11  *Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  Furthermore, because the

12  statute of limitations for a § 17200 claim is four years—as opposed to the three-year limitations

13  period for California and FLSA overtime claims—Plaintiffs may seek damages for a four-year

14  period prior to filing of this suit.  *See* Cal. Bus. & Prof. Code § 17208; *Cortez*, 23 Cal. 4th at 178-

15  79 ("It follows that an action to recover wages that might be barred if brought pursuant to Labor

16  Code section 1194 still may be pursued as a UCL action seeking restitution pursuant to section

17  17203 if the failure to pay constitutes a business practice.").

### d.     Minimum Wage Violations

19  Plaintiffs pleaded Count III for minimum wage violations under California Labor Code

20  § 1194.2.  However, Plaintiffs now state that their "primary bases for liability against the individual

21  Defendants are the first and second counts in the Complaint," and that Count III "was only made as

22  to Plaintiff Jesus Santos.  However, because of a recent change in the law, Santos no longer makes

23  this claim."  Mot. at 11-12.  Plaintiffs' counsel explains that the statute of limitations for Santos's

24  claim under Count III expired prior to filing.  *See* Second Tran Decl. ¶ 18.  Plaintiffs have thus

25  voluntarily withdrawn Count III at least as to the Martinez Defendants.  Accordingly, the Court

26  construes Plaintiffs' statements as an amendment to Plaintiffs' complaint to withdraw Count III.

27  *See Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 689-90 (9th Cir. 2005)

28  (construing voluntary withdrawal of claim as an amendment to the complaint under Fed. R. Civ. P.

12

Case No.: 12-CV-06133-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT

15(a), instead of a dismissal).  Therefore, Plaintiffs' Motion as to Count III against the Martinez

Defendants is DENIED as moot.

### e.     Liability of Defendants

The Court next addresses whether the Martinez Defendants are liable as individuals for the

alleged acts.  Plaintiffs filed this suit against the Martinez Defendants and Zentiram, alleging that

the Martinez Defendants do business as ("dba") Zentiram.  First Am. Compl. ¶ 4.  Under California

law, "[t]here is no legal distinction between an individual and the fictitious names under which he

or she does business."  *People v. Eastburn*, 189 Cal. App. 4th 1501, 1505-06 (2010).  Under federal

law, for FLSA purposes, "[w]here an individual exercises control over the nature and structure of

the employment relationship, or economic control over the relationship, that individual is an

employer within the meaning of the Act, and is subject to liability."  *Boucher v. Shaw*, 572 F.3d

1087, 1091 (9th Cir. 2009) (quotation and citation omitted).  Here, Plaintiffs allege that the

Martinez Defendants employed Plaintiffs at all relevant times and paid Plaintiffs in cash (First Am.

Compl. ¶¶ 7-9); that Fidel Martinez operated the business (*e.g.*, Jesus Hernandez Decl. ¶¶ 2, 9); and

that Fidel Martinez controlled wages and hours (*e.g.*, Jorge Hernandez Decl. ¶¶ 11, 15).

Throughout the First Amended Complaint, Plaintiffs assert that Defendants collectively engaged in

the alleged violations.  *See, e.g.*, First Am. Compl. ¶¶ 12, 34.  Those well-pleaded allegations are

taken as true now that default has been entered.  *Fair Hous.*, 285 F.3d at 906.  The Martinez

Defendants thus qualify as employers under the FLSA.  § 203(d) (FLSA applies to "any person

acting directly or indirectly in the interest of an employer in relation to an employee"); *Boucher*,

572 F.3d at 1091 (noting that under the FLSA, the definition of "employer" has an "expansive

interpretation").

### 3.     Fourth *Eitel* Factor: The Sum of Money at Stake

Under the fourth factor, "the court must consider the amount of money at stake in relation

to the seriousness of Defendant's conduct."  *PepsiCo Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172,

1176 (C.D. Cal. 2002); *see also Eitel*, 782 F.2d at 1471-72.  "The Court considers Plaintiff's

declarations, calculations, and other documentation of damages in determining if the amount at

stake is reasonable."  *Truong Giang Corp. v. Twinstar Tea Corp.*, No. 06-CV-03594-JSW, 2007

13

United States District Court
For the Northern District of California

1  U.S. Dist. LEXIS 100237, at *33 (N.D. Cal. Mar. 22, 2007), *adopted by* 2007 U.S. Dist. LEXIS

2  38642 (N.D. Cal. May 29, 2007).  Default judgment is disfavored when a large amount of money is

3  involved or unreasonable in light of the potential loss caused by the defendant's actions.  *See id.*

4       Jesus Hernandez seeks to recover $45,018.28, Jorge Hernandez seeks $11,797.51, Muñoz

5  seeks $26,856.50, and Santos seeks $14,767.56, in addition to $13,418.92 in fees and costs, for a

6  total of $111,828.77.  Mot. at 16-18.  The respective sums include wages under California Labor

7  Code § 1194, liquidated damages under the FLSA, and penalties under California Labor Code §

8  203, with fees and costs.  *Id.*  Although not insubstantial sums, the amounts that Plaintiffs request

9  are reasonable in light of the fact that Plaintiffs each worked over three years for Defendants

10  without receiving overtime to which they were entitled.

### 4. Fifth and Sixth *Eitel* Factors: Potential Disputes of Material Fact and Excusable Neglect

12       The fifth *Eitel* factor considers the possibility of dispute as to any material facts in the case.

13  Defendants have failed to make an appearance in this case.  The Court therefore takes the

14  allegations in the complaint as true.  *Fair Hous.*, 285 F.3d at 906.  Given that posture, the Court

15  finds that disputes of material facts are unlikely.

16       The sixth *Eitel* factor considers whether failure to appear was the result of excusable

17  neglect.  Summons were issued to the Martinez Defendants on December 4, 2012 (ECF No. 2) and

18  returned executed on January 31, 2012 (ECF No. 6).  Nothing in the record before the Court

19  indicates that the service was improper.  Defendants, however, have not appeared in this case.

20  Nothing before the Court suggests that this failure to appear was the result of excusable neglect.

21       The fifth and sixth *Eitel* factors thus favor entry of default judgment.

### 5. Seventh *Eitel* Factor: Policy Favoring Decision on the Merits

23       While the policy favoring decision on the merits generally weighs strongly against

24  awarding default judgment, district courts have regularly held that this policy, standing alone, is

25  not dispositive, especially where a defendant fails to appear or defend itself.  *See, e.g.*, *Craigslist,*

26  *Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010); *United States v. Lyon*,

27  No. CIV S-10-2549 GEB EFB, 2011 U.S. Dist. LEXIS 60812, at *7-8 (E.D. Cal. June 7, 2011).

Case No.: 12-CV-06133-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT

United States District Court
For the Northern District of California

1    Although the Martinez Defendants were served a year and a half ago (ECF No. 6), they have never

2    made an appearance nor challenged the entry of default against them.  Also, Fidel Martinez was

3    arrested during the pendency of this case (First Tran Decl. ¶ 7), and Zentiram filed for bankruptcy,

4    resulting in a stay of all proceedings as to Zentiram (ECF No. 16).  The likelihood of the case

5    proceeding to a resolution on the merits is unlikely.  The Court finds that the seventh *Eitel* factor is

6    outweighed by the other six factors that favor default judgment.  *See United States v. Ordonez*, No.

7    10-01921, 2011 U.S. Dist. LEXIS 50756, at *7 (E.D. Cal. May 11, 2011).  The Court therefore

8    finds that default judgment is appropriate in this case.

9         **C.     Damages**

10        A plaintiff seeking default judgment "must also prove all damages sought in the

11   complaint."  *Dr. JKL Ltd*., 749 F. Supp. 2d at 1046 (citing *Philip Morris USA, Inc. v. Castworld*

12   *Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003)).  Rule 55 does not require the court to conduct

13   a hearing on damages, as long as it ensures that there is an evidentiary basis for the damages

14   awarded in the default judgment.  *See Action S.A. v. Marc Rich & Co. Inc.*, 951 F.2d 504, 508 (2d

15   Cir. 1991).  As noted above, each Plaintiff has provided a supporting declaration and a spreadsheet

16   detailing their requested damages.  *See* ECF Nos. 34-1 to -4, 34-8 to -11.

17        Where an employer fails to maintain accurate payroll records, an employee carries his

18   burden under the FLSA if he shows he performed work for which he was improperly compensated

19   and produces some evidence to show the amount and extent of that work "as a matter of just and

20   reasonable inference."  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946),

21   *superseded by statute on other ground*, Portal-to-Portal Act, 61 Stat. 86-87; *see also McLaughlin v.*

22   *Seto*, 850 F.2d 586, 589 (9th Cir. 1988); *Brock v. Seto*, 790 F.2d 1446, 1448 (9th Cir. 1986).  The

23   Ninth Circuit has approved "'approximated' awards where plaintiffs can establish, to an imperfect

24   degree of certainty, that they 'have performed work and have not been paid in accordance with the

25   [FLSA].'"  *Alvarez v. IBP, Inc.*, 339 F.3d 894, 914-15 (9th Cir. 2003) (citing *Brock*, 790 F.2d at

26   1448).  "In such instances, the only uncertainty is the amount of damage, not the fact that damages

27   are due.  Where an approximate award based on reasonable inferences forms a satisfactory

28

Case No.: 12-CV-06133-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT

United States District Court
For the Northern District of California

1    surrogate for unquantified and unrecorded actual times, an approximated award is permissible." *Id.*

2    (internal quotation marks, citations, and alterations omitted).

3          The Court denied Plaintiffs' previous motion for default judgment with leave to amend

4    because the Court identified certain inconsistencies in Plaintiffs' damages calculations. *See* ECF

5    No. 33. Plaintiffs have revised their calculations in response to the Court's order. Furthermore, as

6    noted above, Plaintiffs do not seek any liquidated damages for minimum wage violations under

7    Count III.

8                    **1.      Failure to Pay Overtime Under California Law**

9          Section 1194(a) states that "any employee receiving less than . . . the legal overtime

10   compensation applicable to the employee is entitled to recover in a civil action the unpaid balance

11   of the full amount of this . . . overtime compensation, including interest thereon, reasonable

12   attorney's fees, and costs of suit." "Any work in excess of eight hours in one workday and any

13   work in excess of 40 hours in any one workweek . . . shall be compensated at the rate of no less

14   than one and one-half times the regular rate of pay for an employee." Cal. Lab. Code § 510(a).

15         Where California law is not otherwise explicit, California courts look to federal law in

16   defining and interpreting "regular rate" of pay. *See Alonzo v. Maximus, Inc.*, 832 F. Supp. 2d 1122,

17   1129 (C.D. Cal. 2011); *Zator v. Sprint/United Mgmt. Co.*, No. 09cv0935-LAB (MDD), 2011 U.S.

18   Dist. LEXIS 33378, at *8 (S.D. Cal. Mar. 29, 2011) ("California looks to the Fair Labor Standards

19   Act to determine what . . . constitutes the regular rate of pay for overtime purposes."); *Advanced-*

20   *Tech Sec. Servs., Inc. v. Super. Ct.*, 163 Cal. App. 4th 700, 707 (2008) (California courts look to

21   Department of Labor regulations interpreting the "regular rate" of pay under the FLSA to interpret

22   that term as used in California Labor Code § 510).

23         The only evidence before the Court is Plaintiffs' sworn declarations and spreadsheets

24   regarding the number of hours Plaintiffs worked and the amount of money Defendants paid in

25   compensation for those hours, and certain wage stubs that Jesus Hernandez and Muñoz saved.

26   However, the Court will not penalize Plaintiffs for the failure to produce any payment records

27   because Defendants failed to provide Plaintiffs with pay stubs or other wage records. *Ulin v.*

28   *Alaea-72, Inc.*, No. C-09-3160-EDL, 2011 U.S. Dist. LEXIS 17468, at *38 (N.D. Cal. Feb. 23,

16

1    2011) ("Because very few records were kept, these damages must necessarily be approximated.").

2    Since Defendants have failed to appear in this litigation, Plaintiffs' evidence stands unrefuted.

3         Additionally, as noted above, Plaintiffs may collect damages for the four years prior to the

4    filing date of this lawsuit (December 4, 2012) because the statute of limitations for claims under

5    § 17200 is four years.

### a.    Jesus Hernandez's Unpaid Overtime Wages

7         Jesus Hernandez estimates his unpaid overtime by listing the regular and overtime hours he

8    worked for each week since December 8, 2008, the hourly rate that Defendants allegedly promised

9    him ($15 or $16, depending on the time period), and the amounts that he actually received.  *See*

10   ECF No. 34-8.  He applies a general work schedule of 6:30 A.M. to 6:30 P.M. (with one hour for

11   lunch) Monday through Friday, and 6:30 A.M. to 2:30 P.M. on Saturdays, with a change to

12   working every other Sunday starting in October/November 2009.  *Id.* at 3-4.  This schedule is

13   consistent with his declaration.  *See* Jesus Hernandez Decl. ¶¶ 5-6.  From these numbers, he

14   calculates for each week the amount he earned and subtracts the amount he was actually paid to

15   arrive at his unpaid overtime.  He also computes pre-judgment interest based on the 10% rate under

16   California Civil Code § 3289(b), using the equation: Interest = (Amount owed)/(365 days in a

17   year)*(10% interest)*(number of days since audit was created).  *See* First Tran Decl. ¶ 18.[2]

18   However, he does not seek interest for any unpaid overtime within the three-year period prior to

19   this lawsuit.  *See* Second Tran Decl. ¶ 5.  The Court finds that Jesus Hernandez's calculations are

20   generally sufficient to establish his entitlement to unpaid overtime, with the exception of certain

21   discrepancies.

22        First, Jesus Hernandez's spreadsheet indicates that his hourly rate decreased from $16 to

23   $15 after February 27, 2011.  *See* ECF No. 34-8 at 3.  However, his sworn declaration states that

24   this decrease occurred "around March *2010*."  Jesus Hernandez Decl. ¶ 7 (emphasis added).  His

25   pay stubs include wages for the weeks of February 28, 2010 and March 7, 2010, which show an

---

[2]    Based on this equation, Plaintiffs' interest calculations appear to correspond to audit dates of May 22, 2013 (for Jesus Hernandez and Santos) and May 31, 2013 (for Jorge Hernandez). Plaintiffs declined to update any interest calculations since their prior motion for default judgment. *See* Second Tran Decl. ¶ 23.

17

United States District Court
For the Northern District of California

1    hourly rate of $16, but do not show any wages after March 13, 2010.  ECF No. 34-6 at pp.11-12.

2    Due to this inconsistency, he has not shown entitlement to the higher $16 rate from March 14, 2010

3    to February 27, 2011.  Accordingly, the Court reduces Jesus Hernandez's recovery by applying the

4    $15 rate stated in his declaration (and a corresponding $22.50 overtime rate) for this period.[3]  This

5    adjustment does not affect pre-judgment interest because he does not seek interest for this period.

6    *See* ECF No. 34-8 at 2-3.  This change reduces Jesus Hernandez's unpaid overtime from

7    $23,360.25 to $20,011.00.

8           Second, there is a very small difference between the total interest stated for Jesus

9    Hernandez in the Motion ($3,465.78) and the sum of the interest in his spreadsheet ($3,465.74).

10   The Court awards the latter number, which the evidence supports.  Accordingly, Jesus Hernandez

11   is entitled to $23,476.74 in unpaid overtime and corresponding pre-judgment interest.

### b.    Jorge Hernandez's Unpaid Overtime Wages

13          Jorge Hernandez estimates his unpaid overtime using similar calculations.  *See* ECF No.

14   34-9.  He claims that Defendants owed him $8 per hour from December 8, 2008 through January 3,

15   2010, $10 per hour from January 4, 2010 through January 2, 2011, and $11 per hour from January

16   3, 2011 through November 27, 2011.  *See id.*  He applies two general work schedules: (1) for the

17   period through 2011, a schedule of 7:00 A.M. to 5:00 P.M. (with one hour for lunch) Monday

18   through Friday, and 7:00 A.M. to 2:00 P.M. on Saturdays; and (2) after 2011, a schedule of 7:00

19   A.M. to 3:30 P.M. (with one hour for lunch) Monday through Friday, and 7:00 A.M. to 12:00 P.M.

20   on six Sundays.  *Id.* at 3-4.  These schedules are consistent with his declaration.  *See* Jorge

21   Hernandez Decl. ¶¶ 4-11.  Like his uncle, he does not seek interest for the three-year period prior to

22   this lawsuit.  The Court finds that Jorge Hernandez's calculations are sufficient to establish his

23   entitlement to unpaid overtime and corresponding pre-judgment interest, totaling $6,120.01.

---

[3]         The Court does not adjust the "Amount Paid" numbers for March 2010 to March 2011
(which could affect the amount unpaid).  The Amount Paid values are consistent with multiplying
total hours (regular and overtime) by the regular hourly rate.  However, Jesus Hernandez does not
say that he used this calculation, and his attorney states that amounts paid were determined through
interviews and limited wage stubs.  *See* First Tran Decl. ¶ 16.  Accordingly, the Court finds no
basis for re-calculating any Amount Paid numbers with the revised hourly rates.

Case No.: 12-CV-06133-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### c.       Muñoz's Unpaid Overtime Wages

Muñoz provides a comparable spreadsheet for her alleged damages.  *See* ECF No. 34-10.

She claims an hourly rate of $9 from December 8, 2008 through December 28, 2008 and August 8,

2010 through September 4, 2011, and a $10 rate from September 5, 2011 through April 8, 2012.

*See id.*  Her wage stubs confirm that Defendants paid her $10 per hour at least by February 4, 2012.

*See* ECF No. 34-7.  She applies a general work schedule of 6:00 A.M. to 9:00 P.M. (with one hour

for lunch) Monday through Friday.  *Id.* at 4.  This schedule is consistent with her declaration.  *See*

Muñoz Decl. ¶¶ 8-9, 14.  Additionally, she seeks double pay for work in excess of twelve hours in

a given day.  *See* Cal. Labor Code § 510(a).  She does not seek any interest.  The Court finds that

Muñoz's calculations are sufficient to establish her entitlement to unpaid overtime, totaling

$13,954.25.

### d.       Santos's Unpaid Overtime Wages

Santos also provides a spreadsheet of his damages.  *See* ECF No. 34-11.  He claims an

hourly rate of $8 from December 8, 2008 through October 2, 2011.  *See id.*  In his declaration, he

indicates that he stayed at work from 6:30 A.M. or 7:00 A.M. until 7:00 P.M. or 8:00 P.M. on

weekdays, or a total of about thirteen hours, but also states that he "stayed at work for ten hours

during weekdays."  Santos Decl. ¶ 4.  However, this potential inconsistency is immaterial because

Santos seeks damages for only nine hours per day Monday through Friday, and seven hours per

day on Saturdays.  ECF No. 34-11 at 3.  He does not seek interest for the three-year period prior to

this lawsuit.  The Court finds that Santos's calculations are sufficient to establish his entitlement to

unpaid overtime and corresponding pre-judgment interest, totaling $8,475.56.

### 2.       Liquidated Damages Under the FLSA

Plaintiffs also seek liquidated damages under the FLSA using the FLSA's method of

calculating unpaid overtime compensation for Defendants' willful failure to pay overtime.  Under

the FLSA, "[a]ny employer who violates the provisions of section 206 or section 207 of this title

shall be liable to the employee or employees affected in the amount of their unpaid minimum

wages, or their unpaid overtime compensation, as the case may be, and in an additional equal

amount as liquidated damages."  29 U.S.C. § 216(b).  Section 207 prohibits any employer from

19

1    employing any of his employees "for a workweek longer than forty hours unless such employee

2    receives compensation for those hours at a rate not less than one and one-half times the regular rate

3    at which he is employed."  29 U.S.C. § 207(a)(1).

4              Under § 260, liquidated damages are discretionary if the employer proves that it acted in

5    good faith and on reasonable grounds in failing to pay overtime.  "Under 29 U.S.C. § 260, the

6    employer has the burden of establishing subjective and objective good faith in its violation of the

7    FLSA."  *Local 246 Util. Workers Union of Am. v. S. Cal. Edison Co.*, 83 F.3d 292, 297-98 (9th Cir.

8    1996).  Here, Defendants have not appeared or established this defense.  Thus, Plaintiffs are

9    entitled to liquidated damages.  *See Rivera v. Rivera*, No. 10-CV-01345-LHK, 2011 U.S. Dist.

10   LEXIS 52728, at *15-16 (N.D. Cal. May 17, 2011) (awarding liquidated damages for unpaid

11   overtime compensation under Cal. Labor Code § 1194).

12             Plaintiffs seek liquidated damages in amounts equal to the amount of unpaid overtime

13   compensation to which Plaintiffs are entitled under the FLSA, within the three-year limitations

14   period prior to suit.  The FLSA requires that the Court first determine Plaintiffs' weekly salaries.

15   29 C.F.R. § 778.113(b).  The regular hourly rate cannot be less than the statutory minimum.  29

16   C.F.R. § 778.107.  California's minimum wage at the relevant time for all Plaintiffs was $8.00.  *See*

17   History of California Minimum Wage, at http://www.dir.ca.gov/iwc/minimumwagehistory.htm.

18   As explained above, Plaintiffs presented evidence regarding their weekly salaries based on the

19   hourly rates that Defendants promised, and Plaintiffs' hourly rates met or exceeded the California

20   minimum at all relevant times.  Accordingly, the Court applies the hourly rates as stated (and

21   revised) above.

22                        a.        **Jesus Hernandez**

23             Jesus Hernandez's spreadsheet includes a column for liquidated damages on a weekly basis.

24   These numbers match his weekly unpaid overtime wages.  However, for five weeks during the

25   relevant three-year period (beginning December 21, 2009, December 28, 2009, June 28, 2010,

26   December 20, 2010, and December 27, 2010), the spreadsheet shows less than 40 regular hours

27   worked, with the remaining hours listed as overtime.  *See* ECF No. 34-8.  This does not necessarily

28   affect Jesus Hernandez's recovery for overtime under California law because California Labor

20

**United States District Court**
For the Northern District of California

Code § 510(a) mandates overtime for "work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek." Thus, Jesus Hernandez could have accrued overtime despite working less than 40 regular weekly hours by working more than eight hours a day. Indeed, he asserts that he generally worked 11 hours a day. However, the FLSA awards overtime only for "a workweek longer than forty hours." § 207(a)(1). Indeed, Plaintiffs' counsel acknowledges this point: "Liquidated damages are measured as all hours over forty in a week . . . ." First Tran Decl. ¶ 18. As a result, Jesus Hernandez is entitled to FLSA liquidated damages only for hours beyond 40 in a given week. The Court therefore adjusts liquidated damages by reducing the number of overtime hours for those five weeks by the number of regular hours less than 40 that were worked. This adjustment (combined with the adjustment above to revise his hourly rate from $16 to $15 for March 14, 2010 to February 27, 2011) reduces his liquidated damages from $14,592.25 to $ 11,170.00.

### b.   Jorge Hernandez

Jorge Hernandez also asserts liquidated damages within the three-year FLSA limitations period. His spreadsheet includes multiple weeks where he worked less than 40 regular hours. However, he does not seek unpaid overtime or liquidated damages for any of those weeks. *See* ECF No. 34-9. The Court finds that Jorge Hernandez's calculations are sufficient to establish his entitlement to liquidated damages of $3037.50.

### c.   Muñoz

Muñoz's asserted liquidated damages are less than her unpaid overtime because she earned double wages for certain hours, as explained above, which are not available under the FLSA. Her spreadsheet includes only one week where she worked less than 40 regular hours (starting April 2, 2012), and she does not seek unpaid overtime or liquidated damages for that week. *See* ECF No. 34-9. The Court finds that Muñoz's calculations are sufficient to establish her entitlement to liquidated damages of $10,502.25.

Case No.: 12-CV-06133-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT

United States District Court
For the Northern District of California

### d.      Santos

Santos also seeks liquidated damages equivalent to his unpaid overtime.  *See* ECF No. 34-11.  The Court finds that Santos's calculations are sufficient to establish his entitlement to liquidated damages of $4,372.00.

### 3.      Failure to Pay Waiting Time Penalties

California Labor Code § 203 provides that "[i]f an employer willfully fails to pay, without abatement or reduction, . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." Upon discharge, the employees' earned and unpaid wages are due within 72 hours.  Cal. Lab. Code § 201(a).  While a "good faith dispute" about wages precludes imposition of waiting time penalties, 8 Cal. Code. Reg. § 13520, Defendants have not provided any justification for noncompliance or raised a good faith dispute.  According to the evidence provided, Plaintiffs were not paid their overtime wages at all, let alone within 72 hours of discharge as required by California statute. Accordingly, Plaintiffs are each entitled to penalties in the amount of their respective daily wages for the 30 days following the end of their employment with Defendants.

In determining the appropriate "waiting time" penalty, "the critical computation required by section 203 is the calculation of a daily wage rate, which can then be multiplied by the number of days of nonpayment, up to 30 days." *Mamika v. Barca*, 68 Cal. App. 4th 487, 493 (1998); *see also Drumm v. Morningstar, Inc.*, 695 F. Supp. 2d 1014, 1018 (N.D. Cal. 2010).

To determine their respective daily wages, Plaintiffs use the hourly rates they asserted for their § 1194 unpaid overtime compensation claims and multiply the respective hourly rates by eight hours to arrive at a daily wage.  *See, e.g.*, Second Tran Decl. ¶ 19 (calculating waiting time penalties for Jesus Hernandez).  Reducing a salary to an hourly rate and then multiplying by eight (the hours of work in a day) to arrive at the daily wage is an acceptable method for calculating the daily wage for purposes of § 203.  *See Drumm*, 695 F. Supp. 2d at 1019-20 (calculating daily wage from annual salary by reducing to hourly wage and multiplying by eight).  The Court uses Plaintiffs' respective last hourly rates.  *See* Cal. Lab. Code § 203(a) ("[T]he wages of the employee

22

United States District Court
For the Northern District of California

1   shall continue as a penalty.").  Each Plaintiff also asserts penalties for 30 days, which is the

2   statutory limit.  *Id.*

3        Jesus Hernandez last received $15 per hour, leading to a daily rate (at eight hours of work)

4   of $120, and a 30-day penalty of $3,600.  *See* ECF No. 34-8 at 4.  Jorge Hernandez last received

5   $11 per hour, leading to a daily rate of $88, and a 30-day penalty of $2,640.  *See* ECF No. 34-9 at

6   4.  Muñoz last received $10 per hour, leading to a daily rate of $80, and a 30-day penalty of

7   $2,400.  *See* ECF No. 34-10 at 4.  Santos last received $8 per hour, leading to a daily rate of $64,

8   and a 30-day penalty of $1,920.  *See* ECF No. 34-11 at 3.

9        Based on this uncontested evidence, the Court finds that judgment in favor of Plaintiffs for

10  their respective amounts is warranted.

11              **4.      Attorney Fees and Costs**

12       Plaintiffs are entitled to attorney fees under the FLSA and California law.  *See* 29 U.S.C

13  § 216(b); Cal. Lab. Code §§ 218.5, 1194; *see also Newhouse v. Robert's Ilima Tours, Inc.*, 708

14  F.2d 436, 441 (9th Cir. 1983) ("The FLSA grants prevailing plaintiffs a reasonable attorney's

15  fee."); *Drumm*, 695 F. Supp. 2d at 1018 (noting that under California law, awarding attorney's fees

16  is "mandatory" in unpaid wage claims).

17       Courts in the Ninth Circuit calculate attorney fees using the lodestar method, whereby a

18  court multiplies "the number of hours the prevailing party reasonably expended on the litigation by

19  a reasonable hourly rate."  *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008)

20  (citation omitted).  A party seeking attorney fees bears the burden of demonstrating that the rates

21  requested are "in line with the prevailing market rate of the relevant community."  *Carson v.*

22  *Billings Police Dep't*, 470 F.3d 889, 891 (9th Cir. 2006) (quotation and citation omitted).

23  Generally, "the relevant community is the forum in which the district court sits."  *Camacho*, 523

24  F.3d at 979 (citing *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)).  Typically, "[a]ffidavits of

25  the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate

26  determinations in other cases . . . are satisfactory evidence of the prevailing market rate."  *U.*

27  *Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

28

Case No.: 12-CV-06133-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT

United States District Court
For the Northern District of California

1    Here, Plaintiffs submitted declarations and timesheets from their two attorneys, Huy Tran

2    and Tomas Margain.  *See* Second Tran Decl. ¶ 40; Margain Decl. (ECF No. 34-15).  Tran claims

3    hourly rates of $75 as a law clerk and $200 as a first-year associate, while Margain billed an hourly

4    rate of $425 as an attorney with sixteen years of experience.  *See* Margain Decl. ¶ 2.  These rates

5    are below the rates in the Laffey Matrix for 2012-13 ($145, $245, and $445, respectively).  *See*

6    ECF No. 34-17; *see also J&J Sports Prods. v. Lee Duong*, No. 13-CV-02002-LHK, 2014 U.S.

7    Dist. LEXIS 52079, at *9 & n.1 (noting that the Laffey Matrix does not necessarily reflect rates in

8    this district).  Plaintiffs' attorneys have also described their experience and training, and fee awards

9    obtained in other cases, to support their rates.  *See id.* ¶¶ 9-17; Second Tran Decl. ¶¶ 75-80.  Given

10   this evidence, the Court finds Plaintiffs' counsel's hourly rates are reasonable.

11    As to total hours, counsel also submitted itemized billing records that show totals of 5.5

12   hours of Tran's time as a law clerk, 40.07 hours of Tran's time as a first-year associate, and 10.35

13   hours of Margain's time.  *See* ECF No. 34-12, 34-18.  Counsel described in detail the work

14   corresponding to each timesheet entry.  *See* Second Tran Decl. ¶¶ 45-74.  Counsel also excluded

15   fees for preparing the second and third version of Plaintiffs' Motion for default judgment.  *Id.* ¶ 40.

16   The Court has reviewed counsel's declarations and timesheets, which contain descriptions of each

17   activity performed and listed in increments of hundredths of an hour, and finds them adequately

18   detailed and related to the work required for this litigation.  The Court notes one minor

19   discrepancy: Tran's timesheet hours as a first-year associate add up to 40.07, not 40.08 as stated in

20   Plaintiffs' Motion, resulting in corresponding fees of $8,014.00 instead of $8,016.67.  *See* Mot. at

21   18.  With this minor adjustment, the Court awards Plaintiffs a total of $12,825.25 in attorney fees,

22   divided evenly between Plaintiffs.

23    Plaintiffs also request costs of $350.00 in filing fees, $141.00 in service fees, and $100.00

24   to perform an asset search on Defendants.  *See id.* at 16.  The Court finds these costs reasonable

25   and therefore awards $591.00 in costs, divided evenly between Plaintiffs.

26   **IV.    CONCLUSION**

27    For the foregoing reasons, the Court GRANTS Plaintiffs' Motion for default judgment as to

28   Counts I, II, IV, and V against the Martinez Defendants.  Plaintiffs are deemed to have amended

24

Case No.: 12-CV-06133-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT

their complaint to withdraw Count III as to the Martinez Defendants, and Plaintiffs' Motion as to Count III against the Martinez Defendants is accordingly DENIED as moot. The Court enters judgment against Defendants in the following amounts:

- Jesus Hernandez
  - Unpaid Overtime Compensation: $20,011.00, plus $3,465.74 in interest
  - Liquidated Damages: $11,170.00
  - Waiting Time Penalties: $3,600.00
  - Attorney Fees: $3,206.31
  - Costs: $147.75
  - TOTAL: $41,600.80
- Jorge Hernandez
  - Unpaid Overtime Compensation: $5,243.50, plus $876.51 in interest
  - Liquidated Damages: $3,037.50
  - Waiting Time Penalties: $2,640.00
  - Attorney Fees: $3,206.31
  - Costs: $147.75
  - TOTAL: $15,151.57
- Muñoz
  - Unpaid Overtime Compensation: $13,954.25
  - Liquidated Damages: $10,502.25
  - Waiting Time Penalties: $2,400.00
  - Attorney Fees: $3,206.31
  - Costs: $147.75
  - TOTAL: $30,210.56
- Santos
  - Unpaid Overtime Compensation: $7,310.25, plus $1,165.31 in interest
  - Liquidated Damages: $4,372.00
  - Waiting Time Penalties: $1,920.00

United States District Court
For the Northern District of California

25

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

o   Attorney Fees: $3,206.31

o   Costs: $147.75

o   TOTAL: $18,121.62

- Total award to Plaintiffs: $105,084.56

**IT IS SO ORDERED.**

Dated: August 13, 2014

_Lucy H. Koh_

LUCY H. KOH
United States District Judge

Case No.: 12-CV-06133-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT